UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE PEPSI BOTTLING GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DONALD THOMAS, et al.,<br><br>Defendant. | CASE NO. C10-54MJP<br><br>ORDER ON DEFENDANT'S MOTIONS FOR:<br>1. AWARD OF COSTS AND ATTORNEY FEES<br>2. SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed

1. Defendant Thomas' Motion for Award of Costs and Attorney Fees (Dkt. No. 48); Plaintiff's Response to Defendant Thomas' Motion for Award of Costs and Attorney Fees (Dkt. No. 50); and Defendant Thomas' Reply re: Motion for Award of Costs and Attorney Fees (Dkt. No. 51)

2. Defendant Thomas' Motion for Summary Judgment on Counterclaim (Dkt. No. 49); Plaintiff's Response to Defendant Thomas' Motion for Summary Judgment on Counterclaim (Dkt. No. 52); and Defendant Thomas' Reply re: Motion for Summary Judgment on Counterclaim (Dkt. No. 53)

and all attached declarations and exhibits, makes the following ruling:

IT IS ORDERED that the motion for award of costs and attorney fees is DENIED: although Defendant Thomas is statutorily entitled to an award of attorney fees, Defendant's counsel is unable to provide suitable documentation to support the request.

IT IS FURTHER ORDERED that Defendant Thomas' motion for summary judgment on his counterclaim is DENIED, and his counterclaim is DISMISSED.

**Background**

Plaintiff Pepsi Bottling Group (PBG) brought this action under ERISA seeking to recover moneys allegedly obtained by Defendant Thomas in settlement of claims arising out of a motor vehicle accident. The Court dismissed the Plaintiff's lawsuit on a summary judgment motion, finding that PBG had failed to establish either the existence of a finalized settlement or a "particular fund or property" which could be attached in equity as PBG requested. Dkt. No. 46. Defendant Thomas is now before the Court requesting an award of costs and fees.

Additionally, Defendant Thomas had filed an amended answer and counterclaim (Dkt. No. 16) based on allegations that Plaintiff had failed to provide certain requested documents in violation of ERISA regulations. He now seeks summary judgment on that counterclaim and an award of the statutory maximum of $110 per day since November 26, 2009.

**Discussion**

    I.    **Attorney Fees and Costs**

Defendant presents several theories under which he is entitled to the award he seeks. As discussed in detail below, the Court finds that 29 U.S.C. § 1132(g) authorizes the court to allow "reasonable attorney's fees and costs of action to either party" and on that basis declines to rule on the remainder of Defendant's theories.

1  29 U.S.C. § 1132(g) provides:

2  **(g) Attorney's fees and costs' awards in action involving delinquent contributions**

3  (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a
4  reasonable attorney's fee and costs of action to either party.

5  There is no requirement in ERISA cases that the Court base its fees and costs award on a

6  finding that Defendant was the "prevailing party" (*see* Hardt v. Reliance Standard Life

7  Insurance, 130 S.Ct. 2149, 2156 (2010)), only that a fee claimant show "some degree of success

8  on the merits." Id. at 2152 (citing Ruckelshaus v. Sierra Club, 462 U.S. 680, 694 (1983)).

9  The Court has no trouble finding that Defendant achieved "some degree of success on the

10  merits." Had Plaintiff's claim been dismissed for want of proper service or on statute of

11  limitations grounds, PBG might convincingly argue that Defendant's victory was "merely

12  procedural." But Defendant, on substantive grounds addressed to the central tenets of ERISA,

13  obtained a dismissal of all claims against him with prejudice. Although "[t]he words 'prevailing

14  party' do not appear in [§ 1132(g)(1)]," (Hardt, *supra*), Defendant can clearly claim that title in

15  this litigation.

16  Defendant seeks an award of costs and fees for both the efforts on his behalf of Professor

17  Roger Baron and attorney Michael Maxwell.

18  Professor Baron's fees

19  Defendant's counsel Michael Maxwell enlisted the assistance of Roger Baron, a law

20  professor at the University of South Dakota School of Law, in defending his client's interests in

21  this matter. Professor Baron submitted a declaration and detailed itemized account of the time he

22  and his assistant spent researching and preparing pleadings on Defendant's behalf. Professor

23  Baron identified his customary hourly fees as $220 per hour, his assistant's customary hourly fee

24

1  at $110 per hour. Plaintiff has not challenged either the rate or the hours expended as
2  unreasonable.

3  What PBG has challenged is whether Professor Baron is entitled to any fees at all. Plaintiff characterizes Professor Baron as an "expert" and Defendant does not challenge that characterization. Professor Baron does not indicate that he is a licensed attorney, and he is not on record as having appeared as counsel in this case. Except as provided in 28 U.S.C. § 1920 (which does not appear applicable here), expert witness fees are not recoverable in an ERISA action. *See* Downey Comm. Hosp. v. Wilson, 977 F.2d 470, 474 (9th Cir. 1992). The Court will not reimburse Defendant the cost of Professor Baron's services as either fees or costs.

Attorney Maxwell's fees

Defendant's counsel Mr. Maxwell likewise seeks fees for his efforts in his client's behalf. The problem is that, unlike his expert, Mr. Maxwell did not keep an ongoing, itemized record of his tasks and time. He does represent that he kept a log of tasks performed in the case on an office software program, but admits that the log does not reflect the amount of time spent on each task. However, Mr. Maxwell failed to even submit that information to the Court, preferring instead to simply request as much money as his expert did (noting that "I have spent much more time than Professor Baron in Defending (*sic*) Thomas against PBG;" Maxwell Decl., ¶ 7).

This is not an adequate basis upon which to request an ERISA attorney fee award and the Court will not award counsel fees based on such an incomplete foundation. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992)(citing Hensley v. Eckerhart, 461 U.S. 424, 433, 437 (1983)).

**Summary Judgment on Counterclaim**

Defendant provides evidence of a series of requests to PBG for various documents – Summary Plan Descriptions, Administrative Services Contracts, contracts related to PBG and STD/LTD Plans for Washington participants, amendments to Plan documents, Summaries of Material Modifications, and Form 5500s, all for the years 2007-2009 – to which he alleges he is entitled. A registered letter was originally sent to PBG in October 2009 and the receipt was signed for by "Jim Loughran." Castello Decl., ¶¶ 3-4; Ex. A. Defendant's counsel received some documents in response to that request. Believing the response to be inadequate, counsel for Defendant sent a second registered letter of request in December 2009; the receipt for that letter was likewise signed by "Jim Loughran" (Id., Ex. B), although PBG's benefits manager denies receipt of the letter (Campbell Decl., ¶ 4). Additional documents were provided in July 2010.

Plaintiff initially contends that, with the dismissal of their claims on summary judgment (Dkt. No. 46), the jurisdiction of this Court over this matter is at an end. But Defendant has filed a valid counterclaim arising out of the same set of facts that inspired PBG's lawsuit, and the dismissal of Plaintiff's underlying claims does not affect the viability of Defendant's counterclaims. PBG claims (without citation to authority) that "[a] court has no jurisdiction to consider dispositive motions after a case is closed" (SJ Response, p. 1), but the "closed" designation of a case on the district's electronic docket is merely a term of administrative bookkeeping and has no legal effect on undismissed, unresolved counterclaims.[1]

---

[1] The Court's comments regarding the "absence of any current case or controversy" (Dkt. No. 46, Order, p. 5) – to which Plaintiff alludes in this summary judgment motion – referred to the merits (or lack thereof) in Plaintiff's claims, not to Def's counterclaim.

1    Additionally, the Court notes that, even in the absence of PBG's filing of its lawsuit,
2 Defendant Thomas would have had an independent right to assert the claims he has brought
3 before this Court by means of counterclaim. The right of a participant in an ERISA plan to be
4 provided certain documents by the Plan administrator upon request is a "stand alone" right;" i.e.,
5 not dependent on the existence of any underlying litigation concerning the Plan. The dismissal
6 of PBG's litigation has no effect on Defendant's ability to litigate his entitlement to the ERISA
7 documents he asked PBG to provide him.

8    Plaintiff further argues that the documents it supplied Defendant represented its
9 understanding of what the ERISA statutes require it to produce and that it is substantially
10 compliant with the statutory requirements. In this case, what "compliance" meant to PBG was
11 supplying the latest version of the ERISA Plan documents in response to Defendant's request,
12 based on its reading of 29 U.S.C. § 1024(b)(4) ("The administrator shall, upon written request of
13 any participant or beneficiary, furnish a copy of the <u>latest</u> updated summary, plan description,
14 and the <u>latest</u> annual report, any terminal report, the bargaining agreement, trust agreement,
15 contract…"; emphasis supplied.).

16    Defendant mounts a vigorous attack on this position, claiming that a "substantial body of
17 federal case law has developed that states that the ERISA plan that was in effect at the time the
18 injuries were incurred controls; therefore, the ERISA plan must produce the original documents
19 upon request." SJ Mtn., p. 2. Indeed, Defendant does cite to a number of cases which have
20 found that the relevant Plan language is that which was in effect at the time of the injuries and
21 Plan administrators may not rely on subsequent amendments which alter the effect of the

1  "original" language.[2]  However, the Court is compelled to note that none of Defendant's cases
2  are from this circuit, only one of them is a circuit court ruling and the vast majority are
3  unreported District Court opinions with (at best) only persuasive value.  Finally, and most
4  significantly, only one of them (Huss v. IBM Medical and Dental Plan, 2009 WL 3713662
5  (N.D.Ill.)) involves a ruling on a request for documents such as Defendant brings before this
6  Court, and its finding that the plaintiff was entitled to a series of Plan documents stretching back
7  through the years was unaccompanied by any citation to case or statutory authority.  Id. at *3.

8  It is the rule in this circuit that the disclosure requirements of ERISA are to be narrowly
9  construed.  Hughes Salaried Retirees Action Comm. v. Administrator of the Hughes Non-
10 Bargaining Retirement Plan, 72 F.3d 686 (9th Cir. 1995) (en banc), *cert. denied,* 517 U.S. 1189
11 (1996).  Although it appears that there is a developing body of law which holds that the Plan
12 language originally in effect when the injuries occurred will control the outcome of any dispute
13 between Plan administrators and beneficiaries, the Court's ruling in this motion is guided by the
14 Ninth Circuit's admonition regarding the narrow construction of the disclosure requirement, the
15 fact that the language of the statute speaks only to the production of the "latest" copies of the
16 Plan, the annual report, etc., and the absence of any appellate court opinions construing the
17 ERISA discovery procedures in the manner sought by Defendant.

18 The Court proceeds cautiously in this area, not only mindful of the restraint counseled by
19 the Ninth Circuit, but also mindful of the general rule that penalizing statutes must be construed
20 strictly and with lenience exercised in favor of the party who may be the object of the penalty.

---

[2] Waupaca Foundry, Inc. v. Gehlhausen, 104 F.Supp.2d 1052 (S.D.Ind. 2000); Gorman v. Carpenters' & Millwrights' Health Benefit Turst Fund, 410 F.3d 1194 (10th Cir. 2005); Burgett v. MEBA Medical and Benefits Plan, 2007 WL 2815745 (E.D.Tex.); Sheet Metal Workers Local 27 Health & Welfare Fund v. Beenick, 2008 WL 5156663 (D.N.J.); ACS/PRIMAX v. Polan, 2008 WL 5213093 (W.D.Pa.); Huss v. IBM Medical and Dental Plan, 2009 WL 3713662 (N.D.Ill.) .

1   *See* Huddleston v. United States, 415 U.S. 814 (1974); Kollman v. Hewitt Associates, LLC, 487 F.3d 139, 144 (3rd Cir. 2007); Ivan Allen Co. v. United States, 422 U.S. 617, 626-27 (1975); and Fisher v. Metropolitan Life Ins. Co., 895 F.2d 1073, 1077 (5th Cir. 1990)(1132(c) must be strictly construed).

    In the final analysis, the Court cannot say that Defendant Thomas is entitled to summary judgment on his claim that Plaintiff has violated the disclosure requirements of ERISA. It follows that Defendant is not entitled as a matter of law to the statutory monetary sanctions that he seeks. Having found as a matter of law that Defendant is not entitled to the relief he seeks through his counterclaim, the Court *sua sponte* orders the counterclaim DISMISSED.

**Conclusion**

    Defendant is entitled to a statutory award of attorney's fees for the work of defense counsel Maxwell, but his request is DENIED based on counsel's inability to document the amount of time expended in this matter. Defendant's request for an award of his expert fees is likewise DENIED as not authorized by ERISA.

    Defendant's request for summary judgment on his counterclaim and the imposition of monetary penalties upon Plaintiff is DENIED, and his counterclaim is DISMISSED.

    The clerk is ordered to provide copies of this order to all counsel.

    Dated: November 4, 2010.

Marsha J. Pechman
United States District Judge